# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SCOTT GORDON, #A1080674, | ) | CIV. NO. 1:17-cv-00541 DKW-KJM |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING AMENDED |
| | ) | COMPLAINT IN PART |
| vs. | ) | |
| | ) | |
| FRANCIS SEQUEIRA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pro se Plaintiff Scott Gordon is incarcerated at the Saguaro Correctional

Center ("SCC") located in Eloy, Arizona. He complains of incidents that allegedly

occurred in June 2016 while he was a pretrial detainee at the Halawa Correctional

Facility ("HCF") in Aiea, Hawaii. Gordon alleges that Defendants[1] failed to

protect him from assault from other inmates, failed to provide him adequate

medical care, and retaliated against him in violation of federal and state law.

The Court finds that Gordon states failure-to-protect claims under the

Fourteenth Amendment and state common law negligence claims against

---

[1]Gordon names HCF Warden Francis Sequeira; Custody Officers (COs") John Does 1-5;
Supervisory COs John Does 6-10 ("Captains, Shift Supervisors, Chief of Security, and the Major
at HCF"); Counselor Paul Neeson; Thomas Craig, III, M.D.; Sergeant Dixon; Captain H.
Su'apaia; Unit Team Manager ("UTM") Keoni Morreira; Programs Administrator Gary Kaplan
(at times spelled "Kaplain"); and Department of Public Safety ("DPS") Acting Institutions
Division Administrator Shari Kimoto, in their individual and official capacities.

Defendants Dr. Thomas Craig, III, Paul Neeson, Gary Kaplan, and Keoni Morreira. These claims may be served and will require a response after service is perfected.

Gordon fails to state a claim against (1) all Defendants named in their official capacities; and (2) because he is a pretrial detainee, any Defendant under the Eighth Amendment. These claims are DISMISSED with prejudice. Gordon also fails to state any colorable (1) First Amendment retaliation claims; and (2) state common law assault and battery claims. These claims are DISMISSED without prejudice but with leave granted to amend.

## I. SCREENING

Federal courts must conduct a pre-answer screening in all cases in which prisoners seek redress from a governmental entity, officer, or employee. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss those claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at §§ 1915(b)(2) and 1915A(b). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

Screening under §§ 1915(e)(2) & 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se prisoners' pleadings must be liberally construed and given the benefit of any doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Leave to amend should be granted if it is possible that the plaintiff can correct the complaint's defects. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II. **BACKGROUND**[2]

On December 4, 2015, Gordon was arrested with a broken collarbone and ribs. On December 7, 2015, he was sent to the Oahu Community Correctional Center ("OCCC") where his injuries were assessed, he was declared a "particularly vulnerable" inmate, and he was housed in Medical Module 2. *See* Am. Compl., ECF No. 8, PageID #46. On December 24, 2015, Gordon had surgery for his injuries and returned to OCCC.

On January 8, 2016, Gordon was transferred to HCF, where he was housed in the HCF Medical Unit. It is unclear how long Gordon remained at the Medical Unit or whether he was ever housed in a different housing unit between January and May 2016.

---

[2]Gordon's allegations of material fact are accepted as true and construed in the light most favorable to him. *See Nordstrom*, 762 F.3d at 908.

On May 2, 2016, Gordon was cleared to work with a notation in his institutional file stating: "'with Restriction, Ambulance Response Within 30 Minutes' (declaring him a vulnerable inmate)." *Id.* On May 26, 2016, Gordon was hired for the kitchen work line and transferred to housing Module 3.

On June 6, 2016, inmate Shalom Tuimalealiifano assaulted Gordon, breaking his jaw. Gordon was taken to the emergency room by ambulance, taking more than an hour to arrive (despite the thirty-minute restriction in Gordon's file). Gordon returned to HCF that day and was rehoused in the Medical Unit. Between June 6 and 20, 2016, Gordon remained in the Medical Unit, where he met with Defendant Thomas Craig, III, M.D., several times. Gordon told Dr. Craig numerous times of his fears for his safety from Tuimalealiifano and Tuimalealiifano's gang.

On June 20, 2016, Gordon met with Defendant HCF counselor Paul Neeson, who had investigated the June 6, 2016 assault. Neeson produced "Anonymous Kites" from inmates who had allegedly witnessed the assault and a "Separatee Status" form for Gordon against Tuimalealiifano, inmate "John Talo," and members of the USO, La Familia, West Side, and other gangs. *Id.* at PageID #47. Although Gordon states that "'Separatee Status' [was] in place," it is unclear when this status took effect. *Id.*, PageID #49. After this meeting with Neeson,

Defendant Gary Kaplan, "who is responsible for authorizing all movements at HCF," authorized Gordon's transfer from the Medical Unit to Module 1. On arrival there, Gordon was "immediately assaulted" by Tuimalealiifano's gang and held hostage for twenty-four hours. *Id.* at PageID #45 & #48.

Gordon was called to the Medical Unit the next day, where he was able to report the second assault. He was immediately taken to the Pali Momi Medical Center emergency room. Gordon returned to HCF later that day and asked Defendant Sergeant Dixon to put him in protective custody. Dixon notified Defendant Captain H. Su'apaia, who authorized Gordon's placement into administrative segregation pending a protective custody evaluation. Gordon alleges that Dixon and Su'apaia failed to "conclude and/or submit [their] findings and recommendation for PC" to their supervisors. *Id.*, PageID #44.

On June 30, 2016, Defendant HCF Warden Francis Sequeira denied Gordon's protective custody status request. Gordon claims that Sequeira did this "despite the overwhelming evidence which included: the 'Anonymous Kites' of people who witnessed the assault and feared for their lives, Investigative Reports generated by staff, the two 'ER' visits, the 'Separatee Status' in place, and the grievances filed by the plaintiff." *Id.*, PageID #49.

Gordon was designated for a third transfer "where he had been directly confronted by inmate 'Shalom.'" *Id.* Gordon feared a third assault and refused to transfer. Consequently, Gordon was sent to disciplinary segregation for fifteen days. He does not detail what happened after he was released from disciplinary segregation, or explain where he was housed in relation to Tuimalealiifano and his gang, but Gordon does not allege that he was assaulted or harassed again. Gordon states that Tuimalealiifano "has forever and finally been removed from the [general population] and now is being pursued by state officials on multiple counts of assaults." *Id.*, PageID #41.

On or about September 19, 2016, Gordon pled nolo contendere to state criminal charges. *See State v. Gordon*, 1PC151001930, available at eCourt Kokua: http://www.courts.state.hi.us/legal_references/records/jims. He was sentenced on or about January 25, 2017, and was later transferred to Arizona.

Gordon commenced this action on October 30, 2017, with an unsigned pleading. *See* ECF No. 1. Gordon filed the signed Amended Complaint on January 5, 2018. Am. Comp., ECF No. 8. He alleges three causes of action: "Count I, The Lack of Training Custody Staff;" "Count II, Threats to Safety;" and "Count III, The Denial of Medical Care." *Id.*, PageID #47-51. Gordon alleges that Defendants violated his rights under the Eighth Amendment by failing to protect

him from assault from other inmates and by discharging him prematurely from the Medical Unit. Gordon also vaguely asserts a First Amendment retaliation claim and state common law claims for negligence, assault, and battery. He seeks declaratory relief, compensatory and punitive damages.

### III. DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

In addition, a plaintiff asserting a § 1983 claim must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). That is, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant thereby showing an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

## A. Eleventh Amendment

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (*quoting Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Gordon is no longer incarcerated at HCF, or in Hawaii, and he does not allege ongoing constitutional violations. Moreover, Gordon's claim for declaratory relief is subsumed by his claims for damages. *See Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005) (stating "because [inmate's] claim for damages necessarily entails a determination whether the officers' alleged conduct violated his rights, his separate request for declaratory relief is subsumed by his damages

action.").  Gordon's damages claims against all Defendants sued in their official capacities are DISMISSED.

## B.    First Amendment - Retaliation

In his claim for relief, Gordon seeks a declaration (and presumably, damages) that "Defendant's [sic] violated plaintiff's First Amendment right not to be retaliated against for filing grievances."  Am. Comp., ECF No. 8, PageID #53. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). A plaintiff can allege retaliatory intent (factor three) by alleging a chronological time line of events from which retaliation can be inferred.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Gordon alleges no facts showing that any Defendant retaliated against him for engaging in conduct protected by the First Amendment, such as filing grievances or lawsuits.  Although he alleges that he filed grievances, Gordon provides no details about them.  He does not state when he filed these grievances,

what their subject matter was, who responded to him and how, or what occurred

thereafter.  That is, Gordon alleges no facts regarding who retaliated against him,

how or why they did so, or how this alleged retaliatory action chilled his First

Amendment rights and was not taken in furtherance of legitimate correctional

goals.  Nor does the detailed timeline that Gordon sets forth suggest that any

Defendant acted with retaliatory intent.  "Threadbare recitals of the elements of a

cause of action" absent supporting facts are insufficient to state a cognizable claim

for relief.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Gordon's

perfunctory retaliation claim is DISMISSED with leave to amend.

## C.    Deliberate Indifference - Eighth or Fourteenth Amendment

Because Gordon was a pretrial detainee when the incidents at issue in this

suit occurred, his claims arise under the Fourteenth Amendment's Due Process

Clause, rather than under the Eighth Amendment's prohibition against cruel and

unusual punishment as he alleges.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979);

*Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2477 (2015) (reviewing pretrial

detainee's excessive force claim under the Fourteenth Amendment and holding that

a fully objective reasonableness standard applies, rather than the traditional

objective/subjective Eighth Amendment standard); *Castro v. Cty. of Los Angeles*,

833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc) (holding that the wholly

objective reasonableness standard set forth in *Kingsley* applies to pretrial detainees' failure-to-protect claims), *cert. denied*, 137 S. Ct. 831 (2017). Gordon's Eighth Amendment claims are DISMISSED with prejudice.

## D.    Denial of Medical Care

In Count III, Gordon alleges that Dr. Craig denied him medical care by releasing him from the Medical Unit on June 20, 2016, despite Craig's "intimate and confidential information" of Gordon's fear of assault by Tuimalealiifano and other gang members if he was released to the general population. Am. Comp., ECF No. 8, PageID #51. Before *Kingsley* and *Castro* were decided, courts routinely applied the Eighth Amendment's two-part objective/subjective test to *all* pretrial detainee conditions of confinement claims. *See Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (reasoning that, although a pretrial detainee's claim of deliberate indifference to a serious medical need arises under the Fourteenth Amendment's Due Process Clause, the Eighth Amendment standard applies); *Castro*, 833 F.3d at 1069. That test requires a showing that (1) the risk posed to the prisoner must be *objectively*, sufficiently serious, *Farmer*, 511 U.S. at 834, and that (2) the prison official must *subjectively* "know[] of and disregard[] an excessive risk to inmate health or safety" *id.* at 837. "In other words, the official

must demonstrate a subjective awareness of the risk of harm." *Castro*, 833 F.3d at

1068 (internal citation omitted).

Since the decisions in *Kingsley* and *Castro*, however, it is unsettled whether

the fully-objective standard applies beyond pretrial detainee excessive force and

failure-to-protect claims.[3] *See Ah Cheung v. Sequeira*, 2017 WL 3431586, at *3

(D. Haw. Aug. 8, 2017) (collecting cases and holding that, under either standard,

the plaintiff failed to state a claim); *Lau v. Kekuaokalani*, 2017 WL 3187216, at *4

(D. Haw. July 25, 2017) (same). If *Castro's* objective reasonableness test applies,

the elements would be:

> (1) The Plaintiff faced a serious medical need indicating that the
> failure to treat the condition would result in further significant injury
> or the unnecessary and wanton infliction of pain; (2) The Defendant
> was aware of Plaintiff's request or need for medical care; (3) The
> Defendant failed to take reasonable steps to obtain or provide medical
> care, even though a reasonable officer (or reasonable medical
> provider) in the circumstances would have appreciated the high degree
> of risk involved – making the likelihood of harm obvious; and (4) By
> failure to take such measures, the Defendant caused Plaintiff's
> injuries."

---

[3]*Compare Dang by & through Dang v. Sheriff, Seminole Cty., Fla.*, 856 F.3d 842, 850 n.1 (11th Cir. 2017) ("[W]e are not persuaded that [*Kingsley's*] holding extends to claims of inadequate medical treatment due to deliberate indifference."); *Alderson v. Concordia Par. Corr. Fac.*, 848 F.3d 415, 420 (5th Cir. 2017) (declining to follow *Castro*, stating, "the Fifth Circuit has continued to . . . apply a subjective standard post-*Kingsley*," to pretrial detainees' conditions of confinement claims); *Guy v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F. App'x 471, 477-78 (6th Cir. Apr. 25, 2017) (analyzing pretrial detainee's inadequate medical care under Eighth Amendment subjective standard, while recognizing *Kingsley's* application to excessive force claims), *with Darnell v. Piniero*, 849 F.3d 17, 35 (2d Cir. 2017) (applying *Kingsley's* and *Castro's* objective standard to all pretrial detainee conditions of confinement claims).

*Lau*, 2017 WL 3187216, at *4 (citing *Guerra v. Sweeny*, 2016 WL 5404407, at *3 n.1 (E.D. Cal. Sept. 27, 2016)).

Regardless of which standard governs, Gordon fails to allege that he had an objectively serious medical need that could result in further significant injury or unnecessary pain that Dr. Craig refused or failed to treat. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). This objective element is required under both standards. *See Lau*, 2017 WL 3187216, at *4. Rather, Gordon is attempting to transform his failure-to-protect claim into a separate claim against Dr. Craig for the denial of medical care. While Dr. Craig may have failed to protect Gordon, as discussed below, nothing suggests that he failed to provide Gordon medical care for his injuries. Gordon fails to state a colorable claim for the denial of medical care, and Count III is DISMISSED with leave to amend.

### E.     Failure to Protect

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations and quotations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citation omitted). To recover for injuries suffered while in custody, a pretrial

detainee "must show that the prison official acted with 'deliberate indifference.'" *Castro*, 833 F.3d at 1071.

The elements of a Fourteenth Amendment failure-to-protect claim are: (1) "The defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) Those conditions put the pretrial detainee at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the [pretrial detainee's] injuries." *Id.* "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn on the facts and circumstances of each particular case." *Id.* (quoting *Kingsley*, 135 S. Ct. at 2473). *Castro* characterized this as requiring "more than negligence but less than subjective intent – something akin to reckless disregard." *Id.*

### 1.    *Count I – June 6, 2016 Assault*

In Count I, Gordon claims that Doe Defendants 1-10, who he alleges were HCF Correctional Officers ("COs") and Supervisory CO's, knew or should have known that Tuimalealiifano was an extremely violent inmate who should have

been separated from other inmates before June 6, 2016, when Tuimalealiifano attacked him. Gordon states that CO Doe Defendants 1-6 knew or should have known from information contained in Tuimalealiifano's institutional records, which included "RAD unit assessments and the official Offendertrac reports." Am. Comp., ECF No. 8, PageID #42. He says they failed "to appropriately classify Tuimalealiifano as 'extremely dangerous' and certified 'STG' due to his reign of violence, terror, and multiple savage assaults." *Id.* at PageID #47. Gordon alleges that Supervisory CO Does 6-10 failed to remove Tuimalealiifano from the general population "pursuant to Policy," establishing their deliberate indifference.[4] *Id.*, PageID #47.

Gordon does not identify what specific information was available to Doe Defendants 1-10 before Tuimalealiifano's attack on June 6, 2016. That is, Gordon does not set forth *when* Tuimalealiifano allegedly assaulted other inmates and staff or *what* specific information was available in Tuimalealiifano's institutional files or criminal history that would have informed them of Tuimalealiifano's threat to other inmates. Gordon also fails to explain what classification of inmates are

_____

[4]Gordon does not state to which prison policy he refers.

housed in Module 3, which might show why he or Tuimalealiifano was incorrectly housed there.[5]

Gordon was incarcerated at HCF from January 8 to June 6, 2016, without incident. He does not allege that he protested his transfer to Module 3 or informed Doe Defendants 1-10 of his fear of Tuimalealiifano specifically, or gang members in general, before he was transferred. Without more facts, Gordon's claim that Doe Defendants 1-10 should have been aware of Tuimalealiifano's dangerousness is simply a conclusory allegation.

Moreover, the use of Doe defendants is generally disfavored in the federal court because it is nearly impossible to serve a summons and complaint on an anonymous defendant. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the names of individual defendants are unknown when a complaint is filed, a plaintiff may refer to the unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege facts to support how each particular Doe defendant violated his constitutional rights. The plaintiff may then obtain the names of Doe defendants whom he believes violated his constitutional

_____

[5]Although Gordon states that he was declared "particularly vulnerable" on intake, this appears to be directed to his injuries when he arrived at OCCC and HCF, rather than to another characteristic that would make him unsuitable for housing in the general population. Gordon does not disclose his own classification status or criminal history, which might show that Doe Defendants 1-10 were objectively, recklessly indifferent to his safety when they housed him with Tuimalealiifano and other gang members.

rights during discovery and substitute those individuals as defendants, unless it is clear that discovery would not uncover their identities, or that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). Gordon fails to provide specific facts about any individual Doe Defendant 1-10, showing that their relationship to his claims is evident.

Gordon indiscriminately sues Doe Defendants 1-10, without any individualized and specific explanation as to how each individual officer violated his rights. He fails to identify sufficient facts for the court to plausibly infer that Doe Defendants 1-10 acted unreasonably with reckless indifference to his safety when he was housed with Tuimalealiifano. Gordon therefore fails to state a claim against Doe Defendants 1-10, and Count I is DISMISSED with leave to amend.

### 2. *Count II – Defendants Dr. Craig, Neeson, Kaplan, and Morreira*

Gordon personally told Dr. Craig and Neeson of his fears regarding Tuimalealiifano and his gang associates after the attack on June 6, 2016. He alleges that Neeson "failed to alert his supervisors of the intimate knowledge that [Neeson] had obtain[ed]," and Dr. Craig allowed him to be discharged into the general population despite his "intimate knowledge of the "Threats to Safety"

toward [Gordon]."[6]   Am. Comp., ECF No. 8, PageID #43.  This is sufficient to infer that Neeson and Craig acted with reckless disregard to conditions that posed a substantial risk of harm to Gordon, failed to take reasonable measures to abate that risk, and thereby failed to protect Gordon from the second attack.

Gordon alleges that Kaplan is responsible for authorizing all movements at HCF and that Unit Team Manager Morreira was responsible for reviewing and filing all documentation pertaining to Gordon.  Gordon says that he had a "Separatee" memorandum in place before he was transferred from the Medical Unit to Module 1, which encompassed inmates Tuimalealiifano and Talo, and members of the USO, La Familia, West Side, and other gangs.  This is sufficient to infer that Kaplan and Morreira made an intentional decision to transfer Gordon from the Medical Unit into Module 1, where Tuimalealiifano's gang associates were housed, despite this information.  That decision put Gordon at a substantial risk of suffering serious harm and plausibly alleges that Kaplan and Morreira failed to take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved.

---

[6]Although Gordon alleges Dr. Craig was deliberately indifferent to his need for medical care by failing to ensure that he remained in the Medical Unit or was sent to protective custody, the Court construes this as a failure-to-protect claim rather than the denial of medical care.

Gordon's claims against Dr. Craig, Neeson, Kaplan, and Morreira shall proceed, and they shall be required to file a response after service is perfected.

### 3.    Count II – Sergeant Dixon and Captain Su'apaia

Gordon asked Sergeant Dixon to be placed in protective custody after the second assault.  Dixon relayed this request to Captain Su'apaia, who placed Gordon in administrative segregation on June 21, 2016, pending an investigation for protective custody.  He faults them because Warden Sequeira denied Gordon protective custody on June 30, 2016, following an investigation.  These allegations are insufficient to state a colorable claim that either Dixon or Su'apaia made an intentional decision that put Gordon at a substantial risk of serious harm, or that either failed to take reasonable measures to abate such a risk.  Rather, Gordon's allegations show that Dixon and Su'apaia acted appropriately in response to his fears.  Gordon fails to state a colorable claim against Dixon or Su'apaia and claims against them are DISMISSED with leave to amend.

### 4.    Count II – Sequeira and Kimoto

Gordon alleges that Warden Sequeira failed to "correct and/or protect [him] in the performance of his duties."  Am. Comp., ECF No. 8, PageID #42.  He alleges that DPS Institutions Administrator Kimoto violated his rights because she

"is responsible for the overall supervision of the DPS . . . [and] the discipline, hiring and firing of all Defendants." *Id.* at PageID #45.

Supervisory officials are not liable under § 1983 for the actions of their subordinates "on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). "[A] prison official in a supervisory position may be held liable under § 1983 if he was personally involved in the constitutional deprivation or a sufficient causal connection exists between his unlawful conduct and the constitutional violation." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013). A sufficient causal connection can exist for the supervisor's: (1) own culpable action or inaction in the training, supervision, or control of subordinates; (2) his/her acquiescence in the constitutional deprivation of which a complaint is made; or (3) conduct that showed a reckless or callous indifference to the rights of others. *Id.*; *Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012). Liability may also be imposed "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977; *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

Sequeira's causal connection to Gordon's claim is based on Sequeira's decision to deny Gordon protective custody on June 30, 2016. Gordon states that Sequeira reached this decision after an investigation that included "inmate request[s], grievances, 'Anonymous Kites,' . . . inmate records," "Investigative Reports generated by staff, the two 'ER' visits, [and] the 'Separatee Status' in place." Am. Comp., ECF No. 8, PageID #42 & #49. That is, Sequeira made a reasoned decision to deny Gordon protective custody based on information gathered during a full investigation, because he determined that Gordon would be safe without protective custody status. Gordon alleges no further attacks or harassment *after* he was released from disciplinary segregation, and thus, he suffered no harm from Sequeira's decision. Gordon fails to state a colorable failure-to-protect claim against Sequeira and claims against the Warden are therefore DISMISSED with leave to amend.

Gordon alleges liability against Kimoto because she "is responsible for the discipline, hiring and firing of all of the Defendants" and is "the highest level supervisor who is responsible for making, enforcing or failure to make policies that would remove extremely violent inmates from the 'GP.'" Am. Comp., ECF No. 8, PageID #45. Gordon provides no allegations of evidence to support his claims against Kimoto regarding insufficient hiring, training, retention, or supervision of

any Defendant.  Nor does he identify what hiring, training or supervision policies or procedures were deficient.  He offers only conclusory allegations against Kimoto.  Kimoto's supervisory position at DPS is insufficient, standing alone, to show her causal connection to his claim that prison officials failed to protect him from assault.  Gordon's claims against Kimoto are DISMISSED with leave to amend.

**F.     State Tort Claims:  Negligence, Assault, and Battery**

Gordon indiscriminately alleges state law claims of assault, battery, and negligence against all Defendants.  "Supplemental jurisdiction over state claims exists when a federal claim is sufficiently substantial to confer federal jurisdiction and there is 'a common nucleus of operative fact between the state and federal claims.'"  *Maizner v. Haw. Dep't of Educ.*, 405 F. Supp. 2d 1225, 1241 (D. Haw. 2005) (quoting *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir.1995) (citations omitted)).

To proceed with a negligence claim under Hawaii law, Gordon must "prove (1) a duty recognized by the law that the defendant owed to the plaintiff; (2) a breach of the duty; (3) that the defendant's breach was the legal cause of the plaintiff's harm; and (4) actual damages."  *O'Grady v. State*, 140 Haw. 36, 398 P.3d 625, 632 (2017), *amended* (June 22, 2017) (citing *Doe Parents No. 1 v. Dep't*

*of Educ.*, 100 Haw. 34, 68, 58 P.3d 545, 579 (2002)).  Gordon plausibly alleges sufficient facts to proceed with negligence claims against Craig, Neeson, Kaplan, and Morreira.  He fails to allege sufficient facts against any other Defendant to proceed on a negligence claim against them.

Under Hawaii law, "a person commits the common law tort of assault if he or she acts with intent to cause another a nonconsensual harmful or offensive contact or apprehension thereof, and the other person apprehends imminent contact."  *Ricks v. Matayoshi*, 2017 WL 1025170, at *9 (D. Haw. Mar. 16, 2017) (citing *Mukaida v. State*, 159 F. Supp.2d 1211, 1223 (D. Haw. 2001) (citing Restatement (Second) of Torts § 21).  "A person commits the common law tort of battery [in Hawaii] if he or she acts with intent to cause a nonconsensual harmful or offensive contact, or apprehension thereof, and the contact occurs."  *Ricks,* 2017 WL 1025170, at *9 (citing *Mukaida* and *Williams v. Aona*, 210 P.3d 501, 513 (Haw. 2009)).

Gordon does not name as a Defendant Tuimalealiifano or any other inmate who he alleges intentionally attacked him.  He appears to allege assault and battery claims generically against all Defendants for their alleged failure to protect him from these assaults.  He fails to allege any facts showing that any Defendant acted with intent to cause an assault and/or battery against him.  That is, Gordon does not

24

allege that any Defendant took steps that they knew and intended would result in a nonconsensual harmful or offensive contact, or the apprehension of such contact.

Moreover, "[t]here is no such thing as a negligent battery or a negligent assault." 8 Am. Law of Torts § 26.1. "Any given act may be intentional or it may be negligent, but it cannot be both. Intent and negligence are regarded as mutually exclusive grounds for liability." Dan B. Dobbs, Paul T. Hayden, and Ellen M. Budlick, The Law Of Torts § 31 (2d ed.); *see also Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12, 21 (2002) (distinguishing between intentional torts and negligence).

> Negligence has been held to be wholly, legally incompatible with the theory of assault and battery... Therefore, a jury cannot find both negligence on the part of the defendant and liability for the intentional torts of assault and battery based on the same acts. Once intentional offensive conduct has been established, the actor is liable for assault and not negligence.

8 Am. Law of Torts § 26:1; *see also Lewis v. Dirt Sports LLC*, 259 F. Supp.3d 1039, 1046 (D. Ariz. 2017).

Gordon fails to allege sufficient facts against any Defendant for assault and battery, and these claims are DISMISSED without prejudice.

## IV.  LEAVE TO AMEND

The Amended Complaint is DISMISSED in part with leave to amend as limited above.  Gordon may file an amended complaint on or before February 26, 2018 that cures the deficiencies in those claims dismissed without prejudice. Gordon must comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Hawaii.  Local Rule LR10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  Any amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, submitted on the court's prisoner civil rights form, and will supersede the preceding complaint.  *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10.  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at 928.

## V.  CONCLUSION

(1) Damages claims against all Defendants in their official capacities and claims asserted under the Eighth Amendment are DISMISSED with prejudice.

(2) Claims alleging retaliation under the First Amendment and state law claims of assault and battery are DISMISSED without prejudice.

(3) Claims asserted against Doe Defendants 1-10, Francis Sequeira, and Shari Kimoto are DISMISSED without prejudice.

(4)  Claims against Defendants Dr. Thomas Craig, III, Paul Neeson, Gary Kaplan, and Keoni Morreira in their individual capacities state a plausible claim for relief as limited by this Order and may be served.

(5) Gordon may file an amended pleading that cures the noted deficiencies in his claims on or before February 26, 2018.

IT IS SO ORDERED.

DATED: January 24, 2018 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Gordon v. State of Hawaii, et al.*; Civil No. 17-00541 DKW-KJM; **ORDER DISMISSING AMENDED COMPLAINT IN PART**

*Gordon v. State*, 1:17-cv-00367 DKW-KJM; Scrng 2017 Gordon 17-367 (fac dsm soh ORD SVC)