IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCOTT GORDON, #A1080674, | CIV. NO. 1:17-cv-00541 DKW-KJM |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |
| vs. | |
| FRANCIS SEQUEIRA, et al., | |
| Defendants. | |

Before the Court is pro se Plaintiff Scott Gordon's First Amended Complaint ("FAC"). ECF No. 14. Gordon names Halawa Correctional Facility ("HCF") employees Warden Francis Sequeira; Classification Custody Officers ("COs") Doe Defendants 1 and 2; Security COs Doe Defendants 3 and 4; Counselor Paul Neeson; Thomas Craig, III, M.D.; Unit Team Manager Keoni Morreira; and Programs Administrator Gary Kaplan as Defendants in their individual capacities. He alleges that Defendants failed to protect him from two assaults by other inmates when he was incarcerated at HCF in June 2016.[1]

The FAC states failure-to-protect claims under the Eighth Amendment against Defendants Dr. Thomas Craig, Paul Neeson, Keoni Morreira, and

---

[1] Although Gordon states the Court has supplemental jurisdiction over his "state law tort claims under 28 U.S.C. § 1367," he alleges no state law claims in the FAC. ECF No. 14, PageID # 108. If Gordon intends to allege state law claims, he must explicitly identify such claims and then move to amend his pleadings pursuant to Fed. R. Civ. P. 15(a).

Classification CO Doe Defendants 1 and 2.  As a result, these claims may be served, and Defendants shall respond.

Gordon fails to state a claim against Defendant HCF Warden Francis Sequeira, and these claims are DISMISSED with prejudice.  Gordon also fails to state a claim against Defendants Gary Kaplan,[2] and Security CO Doe Defendants 3 and 4, and these claims are DISMISSED without prejudice.

## I.  **BACKGROUND**[3]

On May 26, 2016, Gordon was hired for the HCF kitchen work line and transferred to medium security housing Module 3, where inmate Shalom Tuimalealiifano was also housed.  Tuimalealiifano had recently been returned to Hawaii to face criminal charges for assaulting inmate "Naki" in 2012; he had also allegedly assaulted inmate "Landis" in 2015.  Gordon says that Tuimalealiifano was transferred to Arizona because of these two assaults, where he was classified as a maximum security inmate and required to participate in a "SHIP" treatment program that is designed for violent gang members.  He says Tuimalealiifano had

---

[2]Although Gordon stated a claim against Kaplan in his previous pleading, he alleges no facts regarding Kaplan's involvement in his claims in the FAC.  The Court notified Gordon that an amended pleading supersedes a prior pleading and claims or defendants that are not realleged are deemed voluntarily dismissed.  *See* 01/24/2018 Order Dismissing Amended Complaint in Part, ECF No. 9, PageID #81 (citing Local LR10.3 and *Ramirez v. Cty of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

[3]The FAC's allegations of material fact are accepted as true and construed in the light most favorable to Gordon.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

not completed the SHIP program when he was returned to Hawaii and that, therefore, he was still classified as a maximum security inmate when he returned to HCF.

On June 6, 2016, Tuimalealiifano assaulted Gordon and broke his jaw. Gordon was taken immediately to the emergency room for treatment. He returned to HCF that day and was rehoused in the HCF Medical Unit. While in the Medical Unit for approximately two weeks, Gordon met with Defendant Dr. Craig several times and discussed his fears for his safety from Tuimalealiifano and his gang.

On June 20, 2016, Gordon met with Defendant Neeson, who had investigated the June 6, 2016 assault. Neeson apparently initiated "Separatee Status" for Gordon against Tuimalealiifano and all related gang members which was to take effect immediately. Neeson also had investigative reports and anonymous "kites" from other inmates regarding the June 6, 2016 assault. Neeson assured Gordon that he would be safe when he left the Medical Unit. Gordon was then transferred from the Medical Unit to a new module, where he was "immediately assaulted" and held hostage by Tuimalealiifano's gang associates for twenty-four hours. FAC, ECF No. 14, PageID #112. On June 21, 2016, Gordon was discovered and immediately taken to the Pali Momi Medical Center emergency room for treatment. He was apparently returned to the Medical Unit.

On June 30, 2016, Defendant HCF Warden Francis Sequeira denied Gordon's request for protective custody and approved Gordon's transfer to another module. When Gordon arrived at the new module, Tuimalealiifano immediately confronted him. Gordon therefore refused to accept this transfer and was taken to segregation; he was granted protective custody and suffered no disciplinary or other consequences for his refusal to transfer. *See id.*, PageID #113.

Gordon commenced this action on October 30, 2017. Compl., ECF No. 1. On January 5, 2018, Gordon submitted a signed Amended Complaint. ECF No. 8. On January 24, 2018, the Court found that Gordon stated failure-to-protect claims against Defendants Craig, Neeson, Kaplan, and Morreira. *See* 01/24/2018 Order, ECF No. 9. All other claims as alleged against all other Defendants were dismissed.

On March 20, 2018, Gordon filed the FAC, alleging failure-to-protect claims under the Eighth Amendment against Defendants Craig, Neeson, Kaplan, Morreira, Sequeira, and Doe Defendants 1-4. FAC, ECF No. 14.

## II. DISCUSSION

The Court must screen the FAC's failure-to-protect claims to determine whether they state a claim against each named Defendant. *See* 28 U.S.C.

§§ 1915(e) and 1915A(a) (requiring pre-answer screening of all inmate complaints filed in forma pauperis or against government officials). Screening under §§ 1915(e)(2) & 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**A.    Failure-to-Protect Under the Eighth Amendment**

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations and quotations omitted). However, not every injury "suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To establish a failure-to-protect claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official acted with "deliberate

5

indifference" to the inmate's health or safety. *Id.* A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety" – that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prisoner alleging an Eighth Amendment violation need not show that prison officials believed that harm would actually occur; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A prison official's knowledge of the risk "can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004).

A prison official may avoid liability, however, if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *Hayes v. Corr. Corp. of America*, 2012 WL 4481212, *9 (D. Idaho 2012) ("Prison officials might avoid a finding of deliberate indifference if they show, for example, 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'") (citation omitted). Moreover, the

6

negligent failure to protect a prisoner from an assault does not comprise a constitutional violation. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

### 1. *June 6, 2016 Assault – Doe Defendants 1-4*

Gordon claims that Classification CO Doe Defendants 1 and 2 had subjective knowledge that Tuimalealiifano was a violent inmate who should have been separated from medium custody inmates before June 6, 2016. He alleges that they knew that Tuimalealiifano: (1) had attacked at least two other inmates; (2) had been transferred back to Hawaii to face charges in one of these assaults; (3) was a gang member who had not completed his gang programming in Arizona; and (4) had been classified as maximum custody in Arizona. He says their failure to properly classify Tuimalealiifano and ensure that he was housed away from medium custody inmates despite this knowledge constitutes deliberate indifference. Gordon states a colorable Eighth Amendment failure-to-protect claim against Classification CO Doe Defendants 1 and 2.[4]

Gordon's claims against Chief of Security Doe Defendant 3 and Major Doe Defendant 4 are less clear. He alleges that they acted unreasonably by ignoring Tuimalealiifano's violent history and allowing Tuimalealiifano to remain in a

---

[4]Gordon is notified that it is his responsibility to timely identify, name, and serve Classification CO Doe Defendants 1 and 2.

medium security module. Gordon provides no other information regarding these Defendants' personal participation in his assault or sufficient facts that demonstrate their clear, subjective knowledge that Tuimalealiifano posed a substantial risk to all inmates housed in the medium security unit and their deliberate indifference to that risk. A colorable claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Gordon apparently names Security CO Doe Defendants 3 and 4 based on their supervisory positions. Supervisory officials are not liable under § 1983 for the actions of their subordinates "on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). "[A] prison official in a supervisory position may be held liable under § 1983 if he was personally involved in the constitutional deprivation or a sufficient causal connection exists between his unlawful conduct and the constitutional violation." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) . A causal connection can be shown by a supervisor's: (1) own culpable action or inaction in the training, supervision, or control of

subordinates; (2) his or her acquiescence in the constitutional deprivation of which a complaint is made; or (3) conduct that showed a reckless or callous indifference to the rights of others. *Lemire*, 726 F.3d at 1085; *Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012). Liability may also be imposed "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977; *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

Gordon alleges nothing showing what Security CO Doe Defendants 3 and 4 did or failed to do that resulted in his assault on June 6, 2016. Nor does he explain what policy or procedure they implemented that resulted in his assault. The Court cannot plausibly infer a causal connection between Security CO Doe Defendants 3 and 4 without more facts. Gordon's claims against them are DISMISSED.

### 2. *June 20, 2016 Assault – Dr. Craig, Neeson, Morreira, and Kaplan*

The FAC alleges sufficient facts to infer that Dr. Craig, Neeson, and Morreira acted with reckless disregard to conditions that posed a substantial risk of harm to Gordon and failed to take reasonable measures to abate that risk, thereby

9

failing to protect Gordon from the second attack on June 20, 2016. Gordon's claims against Dr. Craig, Neeson, and Morreira shall proceed, and a response is required after service is perfected.

As noted *supra*, n.2, Gordon fails to allege any facts linking Kaplan to his claims in the FAC, and his claims against Kaplan are DISMISSED.

### 3. *Claims Against Warden Sequeira*

Gordon alleges that Warden Sequeira denied him protective custody after the June 20, 2016 assault and authorized Gordon's transfer to a new module. When confronted by Tuimalealiifano again, however, Gordon refused to transfer. Gordon was immediately granted protective custody and states that he suffered no disciplinary consequences for his refusal to transfer to the new module. These facts do not state a claim against Warden Sequeira, who apparently made a decision that later proved untenable and was immediately rescinded. Gordon's request for protective custody was approved, and he suffered no further attacks or disciplinary action while at HCF. Claims against Warden Sequeira are DISMISSED with prejudice.

## III. CONCLUSION

Claims against Defendants Dr. Thomas Craig, Paul Neeson, Keoni Morreira, and Classification CO Doe Defendants 1 and 2, when they are identified, are

suitable for service.  These Defendants are required to file a response after service is perfected.  *See* 42 U.S.C. § 1997e(g)(2).

Claims against Defendant Francis Sequeira are DISMISSED with prejudice.  All other claims against all other Defendants are DISMISSED without prejudice.

## IV.   SERVICE ORDER

The Hawaii Department of Public Safety ("DPS") has agreed to accept waiver of service of summons documents on behalf of any DPS and HCF Defendants named herein.  Because Gordon is not proceeding in forma pauperis, if any Defendant fails to waive service of the summons, it is Gordon's responsibility to ensure that Defendants Dr. Craig, Neeson, Morreira, and Doe Defendants 1 and 2 (when they are identified) are personally served with the First Amended Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure.

IT IS HEREBY ORDERED:

(1)   The Clerk shall send Gordon a copy of the present Order, a copy of the endorsed First Amended Complaint, and completed summonses for Defendants Thomas Craig, III, Paul Neeson, and Keoni Morreira.  Gordon shall retain these documents for use in the event that Defendants Craig, Neeson, and Morreira decline to waive service of the summons and personal service is required.

(2) Per agreement with the Hawaii Department of Public Safety ("DPS"), the Clerk shall provide by electronic means to **DPS liaison Shelley Harrington, Esq**.: (a) a copy of the First Amended Complaint, ECF No. 14, and three COMPLETED NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS forms AO 398, one each for Defendants Craig, Neeson, and Morreira; and (b) three COMPLETED WAIVER OF SERVICE OF SUMMONS forms AO 399, one each for Defendants Craig, Neeson, and Morreira.

(3) Defendants Craig, Neeson, and Morreira shall have **30 days** after these requests for waiver of service of summons are sent to **return the waivers to the court**. Fed. R. Civ. P. 4(d)(1)(F). If Defendants Craig, Neeson, and Morreira fail to do so within that time, Gordon will be directed to effect personal service of the First Amended Complaint on them. In the absence of good cause, any Defendant who fails to return the Waiver of Service of Summons will be required to pay the expenses of personal service. *See* Fed. R. Civ. P. 4(d)(2).

(4) Defendants Craig, Neeson, and Morreira shall file a response to Gordon's First Amended Complaint **within 60** days after electronic service is sent to DPS (if formal service is waived), or **within 45 days** after personal service if formal service of the summons is not waived. Failure to respond may result in entry of a default judgment.

(5) Gordon shall inform the court of any change of address by filing a "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information about the change of address and its effective date and shall not include requests for other relief. Failure to file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(6) After the First Amended Complaint is served and Defendants Craig, Neeson, and Morreira have filed a response, Gordon's documents are deemed served on any Defendant(s) or their attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.

IT IS SO ORDERED.

DATED: April 3, 2018 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Gordon v. State of Hawaii, et al.*; Civil No. 17-00541 DKW-KJM; **ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE**

*Gordon v. State*, No. 1:17-cv-00367 DKW-KJM; SVC ORD '18 Gordon 17-541 (dsm fac part svc)