IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| SCOTT LEE GORDON, | Case No. 17-cv-00541-DKW-KJM |
|---|---|
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO DEFER CONSIDERATION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| PAUL NIESEN, *et al.*, | |
| Defendants. | |

Inmate Scott Gordon brings this lawsuit under the Eighth Amendment and 42 U.S.C. Section 1983, alleging that Defendants (a prison social worker, a corrections supervisor, and a doctor) failed to separate him from a group of inmates who violently assaulted him for the second time. It has been nearly a year since Defendants moved for summary judgment, Dkt. No. 62, contending that they submitted Gordon's request for separation but did not have the authority to approve the request and did not have any information as to whether Gordon was at risk of serious harm. Dkt. No. 63, ¶¶ 19–21, 27. After Gordon obtained court-appointed counsel, Gordon concurrently filed his opposition brief and a motion under Fed.R.Civ.P. 56(d), Dkt. No. 114, urging the Court to defer its summary judgment ruling until he could obtain requested discovery relevant to disputed material facts.

In light of the Magistrate Judge's recent order compelling Defendants to produce some of the information Gordon has requested, Dkt. No. 130, along with

the potential for Gordon to obtain other information that he is pursuing, and because this discovery is likely to elicit specific facts relevant to the pending summary judgment motion, Gordon's motion to defer summary judgment is GRANTED.

## FACTUAL & PROCEDURAL BACKGROUND

Viewing the record evidence in the light most favorable to Gordon as the nonmoving party, *Young v. UPS*, 575 U.S. 206, 216 (2015), the relevant facts are as follows.

### A.   The First Assault – June 6, 2016

On the evening of June 6, 2016, Gordon was walking back to his cell at the Halawa Correctional Facility (HCF) when he was allegedly pulled into a cell and beaten by fellow inmates Shalom Tuimalealiifono (Shalom) and John Talo (Talo). Dkt. No. 113-1, ¶¶ 4–7. Gordon notified the guard on duty that he needed help but refused to tell the guard what happened for fear of retaliation. *Id.* at ¶¶ 8–9, 11. Gordon was transported to the emergency room at an off-site hospital where he remained under the medical care of Defendant Dr. Thomas Craig from June 7 through June 14, 2016. *Id.* at ¶¶ 10, 13–14. On June 14, 2016, Gordon underwent surgery to repair multiple fractures in his jaw, which required inserting metal plates and screws. *Id.* at ¶¶ 12, 15. The next day, Gordon returned to the medical unit at HCF. *Id.* at ¶ 15.

At the time of the incident, Defendant Paul Niesen was employed by the Hawaii Department of Public Safety (DPS) as a social worker at HCF. Dkt. No. 63-1, ¶¶ 1, 4. DPS also employed Defendant Keone Morreira, who was a corrections supervisor at HCF directing and overseeing Niesen. Dkt. No. 63-2, ¶¶ 1, 4; Dkt. No. 119-16 at 5; Dkt. No. 63-1, ¶ 6. Morreira's supervisor was HCF Residency Section Administrator Dovie Borges. Dkt. No. 63-2, ¶ 12.

### B. The Separatee Request

On Friday, June 17, 2019, HCF Module 3 Unit Manager Lauri Lee-Zidek initiated a Separatee Request on Gordon's behalf. Lee-Zidek signed the request form, noted Shalom as the inmate Gordon was to be separated from, and indicated the reason for the request. Dkt. No. 63-2, ¶¶ 6–7; Dkt. No. 113-1, ¶¶ 19–21. That same day, the Separatee Request was routed to Defendant Morreira. Dkt. No. 63-2, ¶ 6; Dkt. No. 113, ¶ 10.

On June 19, 2016, while Gordon was recovering in the HCF medical unit, he filed an "Informal Resolution" of the June 6 assault, Dkt. No. 113-1, ¶ 18, requesting that he be "kept safe and out of harms [sic] way during the healing process" and "not be put back in a hostile situation when [he] healed." Dkt. No. 119-5 at 2. Gordon did not identify his attackers or refer to specific inmates.[1]

---

[1] On the Informal Resolution form, Morreira noted later on June 27, 2016, that a formal separatee request had been filled out for two inmates. Dkt. No. 119-5 at 2.

Morreira believes he received Gordon's Separatee Request on Monday, June 20, 2016. Dkt. No. 119-16 at 7. That same morning, Morreira asked Niesen to meet with Gordon regarding the Separatee Request. *Id.*; Dkt. No. 63-2, ¶ 8. According to Gordon, Niesen arrived at the medical unit that morning with "a notebook" and a partially filled out Separatee Request, which included Gordon's name, Lee-Zidek's name, and Shalom's name, and the form was dated June 17, 2016. *See* Dkt. No. 113-1, ¶¶ 19–22; Dkt. No. 119-6 (Separatee Request).[2] Niesen explained to Gordon that for him to be kept safe and separate from the inmates responsible for attacking him, then Gordon needed to report what happened and sign the Separatee Request form. Dkt. No. 113-1, ¶ 19. Gordon agreed and told Niesen the details of the June 6, 2016 attack, including that Talo was the other inmate involved. *Id.* at ¶ 23. At Gordon's request, Niesen added Talo's name to the Separatee Request form. *Id.* at ¶ 24. Gordon then wrote the following on the form as his reason for the request: "These two gentlemen [Shalom and Talo] were involved in the incident that put me in the medical unit and **I need to be separated from them and other USO's**." Dkt. No. 119-6 at 2; Dkt. No. 113-1, ¶ 25. "USO's"

---

[2]Gordon avers that he "did not meet with anyone regarding the separate status before [Niesen] showed up . . . on June 20, 2016"; he "had never spoken to Ms. Lee-Zideck about the attack that occurred on June 6, 2016"; and he "had kept quiet about the identities of [his] attackers." Dkt. No. 113-1, ¶¶ 19–21. When Gordon asked Niesen "how he got Shalom's name and who had put his name on [the Separatee Request] form," Niesen allegedly responded that he had his "sources." *Id.* at ¶ 21.

referred to Talo and Shalom's prison gang. Dkt. No. 113-1, ¶ 25. Gordon then signed and dated the form, as Niesen directed. *Id.*[3]

After meeting with Gordon, Niesen completed an Incident Report, Dkt. No. 63-7, which included the information Gordon provided that morning in the medical unit. Dkt. No. 63-1, ¶ 10. In the report, Niesen noted that "Gordon expressed repeated concerns that providing this information would make him a target for retaliation by IM [Shalom], IM Talo, and other members of the STG group USO Family, which IM Gordon believes that the other inmates listed in his report are affiliated with." Dkt. No. 63-7. Niesen then personally delivered Gordon's Separatee Request to Morreira on June 20, 2016, and that was the last time Niesen saw the form. Dkt. No. 63-1, ¶ 12. Niesen also delivered his report to Morreira. *See* Dkt. No. 63-7; Dkt. No. 119-16 at 7.

After Niesen gave "[Morreira] the filled-out [Separatee Request] form [for Gordon] and his report," Morreira "added the incarceration status and identification number information for [Shalom] and . . . Talo, and noted that they were alleged to have assaulted [Gordon]." Dkt. No. 119-16 at 7. Morreira also wrote "medium" and "SOS/USO" next to Talo's name and inmate number. Dkt. No. 113-12 at 10–

---

[3]The parties dispute whether Niesen promised that the Separatee Request would be granted. Gordon maintains that he "trusted in [Niesen]'s representations that a separate request would be granted and [he] would be kept separate and away from Talo and Shalom, as well as their gang members." Dkt. No. 113, ¶ 26. Niesen contends, however, that he "did not promise that [he] could ensure [Gordon]'s safety"; he "did not have the authority to ensure [Gordon]'s safety, or the authority to make any promises about [Gordon]'s safety." Dkt. No. 63-1, ¶ 9.

11. Next to Shalom's name and inmate number, Morreira wrote "medium" and "SOS crips." *Id.*; Dkt. No. 125-4 at 5–6. Based on Niesen's Incident Report, Morreira signed and dated Gordon's Separatee Request and wrote "Recommend Separatee" on the first page. Dkt. No. 119-6; Dkt. No. 119-16 at 10. Morreira states that he could only recommend separation because he did "not have the authority to approve or deny Separatee Requests from inmates"; only HCF Warden Francis Sequiera had that authority. Dkt. No. 63-2, ¶¶ 12–13.

At about 12:30 PM on Monday, June 20, 2016, Morreira placed Gordon's Separatee Request and the Incident Report in the office of Dovie Borges, Morreira's supervisor. Dkt. No. 125-4 at 6–7; *see* Dkt. No. 62-3, ¶¶ 12–13. Warden Sequiera approved Gordon's Separatee Request by signing at the bottom of the second page. Dkt. No. 63-3, ¶ 10; Dkt. No. 119-6; Dkt. No. 113-12 at 12. The parties dispute when this approval was issued.[4]

---

[4]DPS represents that it is Warden Sequiera's signature at the bottom of page two of Gordon's Separatee Request, Dkt. No. 113-12 at 12, but the date next to Sequiera's signature is illegible. Defendants' only evidence regarding the approval date is the testimony of HCF Program Control Administrator Gary Kaplan. Dkt. No. 63-3, ¶ 10; *cf.* Dkt. No. 63, ¶ 24. Gordon contends Kaplan's testimony is inadmissible and based on hearsay. Dkt. No. 113, ¶ 24. Gordon is on solid ground. Although Kaplan states that he has "personal knowledge," his declaration is devoid of "*evidence* . . . sufficient to support a finding that [he] has personal knowledge of the matter." Fed.R.Evid. 202 (emphasis added). Indeed, the date on the Separatee Request is illegible and Kaplan does not allege that he witnessed Sequiera approve the request on June 20, 2016. To the extent Kaplan is simply relaying what is perhaps stated in other documents in his possession, his testimony is based on hearsay. Fed.R.Evid. 505.

In Gordon's final approved Separatee Request, under the heading "Reason For Request," a mark or "1" was placed next to the option for "Threat to . . . Life or Limb." Dkt. No. 119-6. According to DPS, it is "unknown" who made the mark. Dkt. No. 113-12 at 11.

### C. The Second Assault – June 20, 2016

On the evening of June 20, 2016, Gordon was discharged from the HCF medical unit. Dkt. No. 113-1, ¶ 27. Before Gordon was admitted to the medical unit, he was housed in Module 3:B:2. Dkt. No. 113-1, ¶ 4; *see also* Dkt. No. 113-7. Upon his release from the medical unit, Gordon was immediately transferred to Module 1, which allegedly housed members of Shalom's gang. Dkt. No. 113-1, ¶ 27. Shortly after Gordon made it to Module 1, he was confronted by "a member of Shalom's gang and several other gang members." Dkt. No. 113-1, ¶ 28. Gordon was directed upstairs and pulled into one of the cells where he was violently attacked by Kevin Govea and another unidentified inmate. *Id.* Gordon sustained multiple closed-fist blows to his head and body, and the inmates threatened Gordon with further harm if he told anyone about the source of his injuries. *See id.*

The next day, Gordon was taken to the medical unit for his prescribed narcotics. Dkt. No. 113-1, ¶ 29. When the nurse asked Gordon about the cut above his eye, Gordon lied and said that he had fainted and fallen while using the toilet. *See id.* at ¶ 30; Dkt. No. 113-13. After receiving stitches at an off-site hospital, later

that night Gordon requested to be placed in protective custody. Dkt. No. 113-1, ¶¶ 31–33; Dkt. No. 119-8 (Gordon's statement); Dkt. No. 119-9 (completed administrative segregation order). As a result, Gordon was placed in a segregated housing unit pending a determination on his protective custody request. Dkt. No. 113-1, ¶ 36. When Gordon was denied protective custody status because his "application was too vague," Dkt. No. 119-17, Gordon was notified on July 7, 2016 that he would be moved back into the general prison population. Dkt. No. 113-1, ¶¶ 38–40. To avoid this result, Gordon refused to accept the transfer and was placed in solitary confinement where he remained until July 22, 2016. *Id.* at ¶¶ 40–41.

In November 2016, Gordon underwent a second surgery to repair his jaw. *Id.* at ¶ 44. Gordon was subsequently transferred to Saguaro Correctional Center in Arizona where he is currently housed. *Id.* at ¶ 1.

### D. Procedural History

Gordon filed this action under 42 U.S.C. Section 1983 on October 30, 2017. Dkt. No. 1. In Gordon's second amended complaint (SAC), Dkt. No. 34, he names Morreira, Niesen, and Dr. Craig as Defendants, and asserts failure-to-protect claims under the Eighth Amendment, as well as negligence claims, arising from the second inmate attack on June 20, 2016. *See id.* at ¶¶ 2, 42, 52, 59.

Nearly a year ago, on March 5, 2019, Defendants moved for summary judgment on Gordon's Eighth Amendment claim, Dkt. No. 62, arguing that they did

not know there was a substantial risk of harm to Gordon, did not have the authority to approve or deny Gordon's Separatee Request, and did not have authority over or involvement in Gordon's housing placement after he was released from the medical unit on June 20, 2016. *See* Dkt. No. 62-1 at 1–2, 11–12. After the Court appointed counsel for Gordon, Dkt. Nos. 68, 86, 101, the briefing schedule on Defendants' summary judgment motion was continued multiple times, Dkt. Nos. 73, 90, 97, 105. On January 15, 2020, Gordon filed his opposition, Dkt. No. 112, and a concurrent Rule 56(d) motion to defer summary judgment until he has received the information requested from Defendants in discovery. Dkt. No. 114. The Court heard oral argument on Defendants' motion and Gordon's motion, and these matters are now ripe for disposition. Dkt. No. 128.

## **DISCUSSION**

In Gordon's Rule 56(d) motion, he requests that any summary judgment determination be delayed until after he has received the relevant discovery materials he has requested from Defendants. He argues there are several factual disputes, which cannot properly be addressed because Defendants have refused to produce three categories of relevant documents and information: (1) the DPS "OffenderTrak" computer database; (2) Gordon's HCF medical records; and (3) descriptions of Defendants' job duties and the procedures that Defendants are required to follow,

thereby making it impossible for Gordon to schedule and effectively conduct depositions of Niesen and Morreira. Dkt. No. 114 at 2–3, 9; Dkt. No. 115, ¶ 8.[5]

Rule 56(d) grants a district court the "discretion to postpone ruling on a defendant's summary judgment motion if the plaintiff needs additional discovery to explore 'facts essential to justify the party's opposition.'" *Crawford-El v. Britton*, 523 U.S. 574, 599 n.20 (1998) (citation omitted); Fed.R.Civ.P.56(d).[6] Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

Fed.R.Civ.P. 56(d). To succeed in delaying summary judgment for further discovery, "[t]he requesting party must show [that]: (1) it has set forth in affidavit form the *specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."

---

[5] On January 28, 2019, Gordon evidently "resigned to the fact that there may need to be two rounds of depositions," Dkt. No. 114 at 11, because Gordon's counsel deposed Morreira, Dkt. No. 127-1, the day before Gordon filed his reply in support of his Rule 56(d) motion, despite that Gordon was still awaiting documents relevant to Morreira's deposition. *See* Dkt. No. 125-1, ¶¶ 9–15.

[6] As part of the 2010 Amendments to the Federal Rules of Civil Procedure, former Rule 56(f) became Rule 56(d) "without substantial change" to the text.

*Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (emphasis in original) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)), *cert. denied*, 139 S. Ct. 1222 (2019).[7] But even where such a showing is made, relief under Rule 56(d) is unwarranted if the requesting party has failed "to conduct discovery diligently" before the opposing party moved for summary judgment. *See, e.g.*, *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002); *Byrd v. Guess*, 137 F.3d 1126, 1135 (9th Cir. 1998) (moving party failed to make "a diligent pursuit of prior discovery opportunities"). Here, Gordon has satisfied the demands of Rule 56(d).

First, Gordon has identified "specific facts" he expects to elicit from further discovery and attached an affidavit in support. Dkt. No. 114 at 3, 9; Dkt. No. 115. In particular, Gordon has sought and is still pursuing discovery related to the following: DPS's OffenderTrak computer database, Gordon's medical records, Defendants' job duties and the procedures they must follow, and an opportunity to depose Defendants. According to Gordon, the OffenderTrak database will reveal information about the inmates at HCF who attacked Gordon prior to June 20, 2016, including their gang affiliations, previous altercations, and their propensity for

---

[7] Of course, a party seeking relief under Rule 56(d) must make a "timely" request, *see Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009), meaning the "motion must be brought before the summary judgment hearing." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). Because Gordon filed his Rule 56(d) motion well before the summary judgment hearing, his motion was timely.

violence. Dkt. No. 114 at 9–10. Gordon's HCF medical records, particularly for the period June 6 through June 20, 2016, Dkt. No. 113-2, ¶ 24, will provide descriptions of Gordon's injuries and perhaps their cause. Dkt. No. 114 at 9–10. The duties and procedures at HCF for Defendants' jobs allegedly will indicate whether Defendants had the authority to approve Gordon's Separatee Request or immediately segregate an inmate if exigent circumstances exist, and describe the process DPS employees were to follow upon the submission of a Separatee Request. *See* Dkt. No. 114 at 9–10; Dkt. No. 125 at 8; Dkt. No. 125-1, ¶ 14. Lastly, deposing Morreira and Niesen will likely shed light on what they knew about the risk to Gordon prior to the second attack on June 20, 2016, *i.e.*, the other inmates' propensity for violence, and the procedures each Defendant was obligated to follow with respect to a Separatee Request. Dkt. No. 114 at 10–11; Dkt. No. 125-1, ¶¶ 11–15. Rule 56(d) does not require a litigant to "predict with accuracy precisely what further discovery *will* reveal . . ." *Stevens*, 899 F.3d at 678 (emphasis in original). The facts Gordon identifies, however, are more than "the object of mere speculation" or "vague assertions" of "needed, but unspecified, facts." *Ohno v. Yasuma*, 723 F.3d 984, 1013 n.29 (9th Cir. 2013) (citations and quotation marks omitted). As such, Gordon has identified with sufficient particularity the facts he hopes to discover from further discovery.

Second, Gordon has provided a sufficient "basis or factual support" tending to show that the above facts exist. *See Stevens*, 899 F.3d at 679 (quoting *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998). Indeed, Defendant Morreira accessed and relied on the "OffenderTrak" database in responding to Gordon's interrogatories. *See, e.g.*, Dkt. No. 115, ¶ 6; Dkt. No. 119-16 at 4–5; Dkt. No. 121-3 at 5; Dkt. No. 125-4 at 8. HCF Nurse Mahina Assily testified in support of Defendants' summary judgment motion that she reviewed Gordon's medical records and recounted the contents of records related to the first inmate attack on June 6, 2016. Dkt. No. 63-4, ¶¶ 3–7; Dkt. No. 115, ¶ 7. Similarly, Morreira stated that he has "seen the document with [his] job description," Dkt. No. 125-4 at 18, and HCF Program Control Administrator Gary Kaplan testified that he is "familiar with the job duty description[s]" for both Morreira and Niesen. Dkt. No. 63-3, ¶¶ 5–9; Dkt. No. 115, ¶ 7. Thus, the information Gordon seeks clearly exists.

Third, the sought-after information is relevant to the issues in the pending summary judgment motion. "[S]ummary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim," *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (citation omitted); that is, the information sought would not "shed light on any of the issues" that must necessarily be decided to grant summary judgment, *see Stevens*, 899 F.3d at 679–80 (quoting *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d

839, 844 (9th Cir. 1994)). As it pertains to Gordon's Eighth Amendment failure-to-protect claim, there are two central issues before the Court on summary judgment. *First*, whether there was an objective, "substantial risk of serious harm" to Gordon prior to the June 20, 2016 inmate assault. *See Farmer v. Brennan*, 511 U.S. 825, 834, 846 (1994). *Second*, whether each Defendant's subjective state of mind was one of "deliberate indifference" toward that risk—namely, did Niesen, Morreira, and Dr. Craig "know[] of and disregard[] an excessive risk to [Gordon's] health or safety[?]" *Id.* at 837, 839; *see also Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009). What Defendants knew about the prison inmates who assaulted Gordon, *e.g.*, their propensity for violence, gang affiliation, and where they were housed, is highly relevant to these issues. *See Jones v. Blanas*, 393 F.3d 918, 930–931 (9th Cir. 2004) (holding that additional discovery should have been permitted on plaintiff's Fourth Amendment claim because it might have produced evidence tying searches to defendants' policies); *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988) (holding that district court erred in entering summary judgment because requested discovery was relevant to "prison procedures" and defendants' deliberate indifference). Moreover, the administratively feasible options at Defendants' disposal to prevent an assault on Gordon are relevant to whether "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511

U.S. at 844. Because the discovery Gordon seeks certainly cannot be deemed "fruitless," *Jones*, 393 F.3d at 930, summary judgment is inappropriate.

The only remaining question is whether Gordon has acted diligently in pursuing discovery. Gordon has done just that in attempting to obtain the above information: He requested documents and moved to compel production before he was even represented by counsel, Dkt. No. 69, and since obtaining counsel, Gordon has subpoenaed DPS to respond to written deposition questions, Dkt. Nos. 93, 96, submitted further document requests and interrogatories, attempted to schedule and depose Defendants. *See* Dkt. No. 115, ¶¶ 6–8.[8] Most importantly, the information Gordon is seeking was the subject of a discovery dispute before the Magistrate Judge prior to when Gordon's opposition brief was filed. Dkt. No. 111. It was not until recently that Morreira was ordered to produce the OffenderTrak information he accessed and Gordon was directed to "follow up with [DPS] concerning the previously issued subpoena that would cover" additional OffenderTrak information, Gordon's medical records, and HCF procedures and personnel job duties. Dkt. No. 130 at 3–4.[9] Thus, Gordon has conducted discovery diligently because the delay here was the result of circumstances beyond Gordon's control. *Smith v. Florida Dep't of Corrs.*, 713 F.3d 1059, 1064–65 (11th Cir. 2013) (finding abuses of

---

[8]*See supra* note 5.
[9]Alternatively, Gordon may seek his own subpoena under Fed.R.Civ.P. 45(b)(2). *Cf.* Fed.R.Civ.P. 34(c).

discretion in prematurely granting summary judgment when defendant had been "blocking" discovery and pro se prisoner had been actively attempting to overcome defendant's resistance).

In sum, Gordon has set forth the *specific facts* he hopes to elicit from further discovery, there is reason to believe these facts exist, the sought-after facts are essential to oppose summary judgment, and Gordon has conducted discovery diligently. Accordingly, Gordon's Rule 56(d) motion, Dkt. No. 114, is GRANTED, and summary judgment is deferred.

## **CONCLUSION**

For the reasons stated, Plaintiff's Motion to Defer Consideration of Defendants' Motion for Summary Judgment, Dkt. No. 114, is GRANTED, and Defendants' Motion for Summary Judgment, Dkt. No. 62, is DEFERRED.

With respect to Defendants' Motion for Summary Judgment, the parties shall each file: (1) a supplemental brief (not to exceed 10 pages), and (2) an updated concise statement of facts, focused on the additional facts exchanged in discovery since the filing of the parties' previous summary judgment briefs. Plaintiff's supplemental submissions are due by April 13, 2020. Defendants' supplemental

submissions are due by April 23, 2020.  No further hearing is necessary, subject to further order of the Court.

IT IS SO ORDERED.

DATED: February 27, 2020 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Scott Lee Gordon v. Paul Niesen, et al*; Civil No. 17-00541 DKW-KJM; **ORDER GRANTING PLAINTIFF'S MOTION TO DEFER CONSIDERATION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**